IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| JAMES E. POTTS #522022 | § | |
| v. | § | CIVIL ACTION NO. 9:11cv188 |
| RICK THALER | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Plaintiff James Potts, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The sole named Defendant in the lawsuit is TDCJ-CID Director Rick Thaler.

In his complaint and at an evidentiary hearing, Potts says that he has been in a status called Special Penalty Cell Restriction (SPCR) for five and a half years. He says that he believes that his life is in danger if he mingles with other inmates, so he consistently refuses other housing assignments. As a result, he receives disciplinary cases, for which he remains in SPCR. This status is also known as Loss of Privileges (LOP).

Potts says that because he is in SPCR, he must remain in his cell for 24 hours a day, and has not had recreation for five years. He says that an officer named Lt. English, and the officer's wife Captain English, have "many relatives" at the Eastham Unit and they "influence other inmates" to push Potts around and to beat him. He says that he was recently pulled out of his cell and beaten by four black gang members; however, Potts stated that this lawsuit was about the conditions of his classification status, including keeping him in his cell for 24 hours a day for five years.

When asked if he should "time out" of SPCR, Potts said that was not his complaint; instead he asserted that a transfer or reassignment off of the Eastham Unit was the solution. Potts specifically said that he was not asking for monetary damages, but for a transfer. He said that he would continue to refuse housing as long as he remained at the Eastham Unit.

Potts acknowledged that life endangerment investigations had been done on his complaints, but said that "unit authorities can only do what they are allowed to do." He added that Thaler was aware that he, Potts, had not recreated for five years.

Warden Dewberry testified at the evidentiary hearing that Special Penalty Cell Restriction is a punishment which is imposed in 30 or 45 day increments. He confirmed that Potts has received a number of disciplinary cases for refusing housing under TDCJ disciplinary code 24.2. Dewberry said that inmates in SPCR do receive some opportunity for recreation, but Potts insisted that he has been on SPCR for five and a half years and has never been out of his cell for recreation.

The Magistrate Judge also received certified copies of TDCJ records at the hearing. These records show that between July of 2006 and December of 2011, Potts received 57 disciplinary cases for refusing housing. Life endangerment investigations were conducted in December of 2010 and April of 2011. In the December 2010 investigation, Potts complained that on November 27, 2010, an inmate nicknamed "Insane" entered his cell, showed Potts his fist, and then left. Potts claimed that "Insane" had been put up to this by "black ranking officers, friends, relatives, and favorite associates of the English's." The officers worked on the wing reported that the cell doors were not open, they did not see any other inmates entering Potts' cell, and that Potts did not complain to them of the incident. Potts was placed in transient status pending the investigation, but said that "I don't need to be moved, I don't want to move, just forget I said anything." The investigator concluded that the allegations could not be substantiated.

In the April 2011 incident, Potts said that he had been threatened by inmates named Lawrence Ealoms and Derek Whittington on April 1 and April 2. He also said that on April 4, these two inmates pulled him out of his cell during LOP showers and beat him. Potts claimed that the

assault was witnessed by staff. The investigator noted that an attempt was made to interview Potts, but he refused to come out of his cell or talk about the allegations. The officers on the wing said that other inmates were "teasing" Potts, but that they did not witness any assaults. Lt. Phillips said that on April 4, the LOP offenders became loud while being escorted to their cells, and that Potts was causing a disturbance in the hallway. Potts said that he had been assaulted and so he was taken to the other side of the hallway and counseled. Phillips reported that Potts had scratches on his chest which did not appear consistent with his allegations. No other evidence was found to support Potts' claims.

After review of the pleadings and testimony, the Magistrate Judge issued a Report on February 22, 2012 recommending that the lawsuit be dismissed as frivolous. The Magistrate Judge observed that Potts' lawsuit challenged the policies surrounding Special Penalty Cell Restriction, and noted that there is no constitutional violation in the fact that TDCJ policies provide for penalties for inmates who commit the disciplinary infraction of refusing a housing assignment. The Magistrate Judge cited a case from the Southern District of Texas called Cook v. Gutierrez, civil action no. 2:10cv35, 2010 WL 1790178 (S.D.Tex., April 30, 2010, no appeal taken), in which the Southern District held that there was no constitutional violation in the fact that an inmate was denied outside recreation for almost two years as a result of placement in SPCR. The Southern District concluded that Cook's custodial status did not implicate any constitutionally protected liberty interests under Sandin v. Conner, 115 S.Ct. 2293, 2301 (1998) and that his lack of recreation time while in SPCR was due to his refusal to accept housing assignments, and noted that Cook had failed to offer any evidence supporting the existence of a health hazard as a result of the denial of outside recreation.

In the present case, the Magistrate Judge said, Potts likewise offered nothing to show that he has suffered any sort of health impairment as a result of the alleged denial of exercise; in fact, Potts' grievances make no mention of being denied exercise at all, much less that he has suffered any harm

3

as a result. Thus, the Magistrate Judge stated that to the extent that Potts complained of a denial of recreation as a result of his classification status, his claim lacked merit.

Next, the Magistrate Judge said that inmates have no liberty interest in their custodial classification, and that Potts had not shown that he was denied due process in his placement on SPCR; on the contrary, the Magistrate Judge noted that the placement on SPCR comes as a result of punishments imposed in disciplinary hearings at which Potts is afforded due process protections.

Nor did Potts show a constitutional violation in the duration of his stay on SPCR. The Magistrate Judge cited <u>Wilkerson v. Stalder</u>, 329 F.3d 431, 436 (5th Cir. 2003), in which the Fifth Circuit said that due process might be violated where the prisoners were kept on lockdown status for 30 years, receiving reviews which they described as "shams." The Magistrate Judge stated that the <u>Wilkerson</u> case differed considerably from Potts', both in the duration of the lockdown and in the fact that Potts receives regular reviews as a well as opportunities to change the behavior for which he remains on SPCR.

In <u>Hernandez v. Velasquez</u>, 522 F.3d 556, 563 (5th Cir. 2008), an inmate named Robert Hernandez was kept on lockdown status for almost a year because of information, later proven erroneous, linking him to the Texas Syndicate prison gang. While he was on lockdown, he could leave his housing assignment, a 5' x 9' foot cell usually shared with another inmate, only for showers, medical appointments, and family visits; there was no evidence that he was afforded recreation. He complained that his muscles atrophied and stiffened up and that he suffered from depression, and no hearing or review was ever held on his confinement until he was released. The district court granted summary judgment, and the Fifth Circuit affirmed this ruling on appeal, holding that there was no evidence that Hernandez was ever subjected to a substantial risk of serious harm. The Fifth Circuit observed that the Constitution does not mandate comfortable prisons and that the placement in lockdown status did not pose an atypical or significant hardship in relation to the ordinary incidents of prison life.

Similarly, Potts did not show that he has been subjected to a substantial risk of serious harm or that his placement in lockdown represented an atypical or significant hardship in relation to the ordinary incidents of prison life, particularly the life of a prisoner who consistently refuses housing assignments. The fact that the life endangerment investigations did not arrive at the result which Potts believed correct did not show a constitutional violation or that the prison officials were deliberately indifferent to his safety.

Finally, the Magistrate Judge determined that Potts did not have a right to be transferred to or housed at any particular prison institution within the state, and that he had not shown the extreme circumstances required for the federal court to interfere in a state prison classification determination. Thus, the Magistrate Judge concluded that Potts' request for transfer to another prison institution cannot be granted and so his lawsuit is without merit.

In his first set of objections, filed on March 6, 2012, Potts says that as long as he remains on the Eastham Unit, he must continue to safeguard his life by refusing housing, staying in his cell and not participating in recreation because it is not safe to mingle among black ranking officers and their favorite offenders. He refers to the December 2010 and April 2011 investigations and states that after he returned from the evidentiary hearing in this case, Lt. English's associates or relatives placed another inmate inside of his cell so that this inmate could harm him. He says that his life is in danger and so he cannot attend recreation programs, and "surely there must a constitutional violation somewhere." Potts' second set of objections, filed on March 12, 2012, is virtually identical to his first one, almost word for the word the same.

Potts' objections are without merit. He does not address the specific findings or conclusions of the Magistrate Judge, but essentially repeats the allegations of his complaint and testimony. As the Magistrate Judge noted, investigations have been conducted on Potts' allegations of being in danger and have been unable to substantiate these allegations. Although Potts complains of an incident which occurred following his return from the evidentiary hearing in this case, that incident is not part of the present lawsuit. In addition, Potts' objections indicate that he has not been denied

5

the opportunity to recreate, but that he declines such opportunities because he believes it not to be safe. Potts has failed to show any basis for liability on the part of Thaler nor that the TDCJ policies are unconstitutional, nor has he shown entitlement to the relief which he seeks.

The Court has conducted a careful *de novo* review of the pleadings and testimony in this cause, the Report of the Magistrate Judge, and the Plaintiff's objections thereto. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the Plaintiff's objections have no merit. It is accordingly

ORDERED that the Plaintiff's objections are overruled and the Report of the Magistrate Judge (docket no. 9) is hereby ADOPTED as the opinion of the District Court. It is further

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted. It is further

ORDERED that any and all motions which may be pending in this action are hereby DENIED.

So **ORDERED** and **SIGNED** this **3**   day of **April, 2012.**

_____
Ron Clark, United States District Judge